ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Man & Machine, Inc. ) ASBCA No. 61608
)
Under Contract No. 000000-00-0-0000 )

APPEARANCE FOR THE APPELLANT: Mr. Clifton Broumand
President

APPEARANCES FOR THE GOVERNMENT: Laurel C. Gillespie, Esq.
Chief Trial Attorney
Ian F. Rothfuss, Esq.
James A. Douglas, Esq.
Trial Attorneys
Defense Health Agency
Falls Church, VA

## OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

The government moves to dismiss this appeal for lack of jurisdiction, arguing that no contract existed between the parties, or, in the alternative, that appellant failed to state a claim upon which relief can be granted. Appellant opposes the motion. The Board grants the motion and dismisses the appeal for lack of jurisdiction.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. In 2015, a nurse consultant for the Infection Prevention and Control Service at Walter Reed National Military Medical Center (hereinafter WRNMMC) requested the WRNMMC information technology (IT) department conduct market research to determine if it could find a company with a common access card (CAC) enabled keyboard that could be easily sanitized and disinfected (gov't mot., ex. G-1 at 1).

2. In response to the request, the WRNMMC chief information officer (CIO) assigned Mr. Marshall Bailey, an information technology contractor, to identify potential vendors of such CAC-enabled keyboards (gov't mot., exs. G-1 at 1, G-3 at 1).

3. Mr. Bailey identified Man & Machine, Inc., (hereinafter appellant or MMI) as a potential vendor for such products, since MMI designed and manufactured keyboards, mice, and other computer accessories (gov't mot., ex. G-3 at 1-2).

4. Mr. Bailey requested information about MMI's waterproof keyboards, mice, and accessories to test and evaluate (gov't mot., ex. 3 at 1). In response to the request from the government, MMI sent test products to WRNMMC on or about December 14, 2015 (app. resp., exs. A-1 to -3).

5. Over the course of the next year, MMI and WRNMMC communicated regarding the products provided. The parties discussed potential modifications and Mr. Bailey's inability to obtain funding for purchase of any products. (R4, tabs 1(b), 1(c); app. resp., exs. A-3, -4, -8)

6. In an email dated January 16, 2017, MMI requested WRNMMC return the products, stating "[we] would like to get our products back so we can show them to other people. If not, then no problem." (R4, tab 1(b) at DHA-R4-9)

7. On or about November 7, 2017, WRNMMC received two invoices from MMI dated October 23, 2017 (gov't mot., ex. G-3 at 3). The first invoice number 328291, totaled $118,773.00 for miscellaneous product development costs (R4, tab 1(a) at DHA-R4-2). The second invoice number 328290, totaled $1,744.18 for the various keyboards and mice sent to WRNMMC (R4, tab 1(a) at DHA-R4-3-4).

8. In addition to the invoices, WRNMMC received an undated letter, indicating it was included with the invoices. The letter stated that MMI "agreed to provide and understood that [WRNMMC] are not committing to the purchase of any product." Even so, MMI alleged in the letter that WRNMMC constructively accepted the products and was required to pay for them. (R4, tab 1)

9. In November 2017, WRNMMC attempted to return the equipment provided by MMI (gov't mot., ex. G-2 at 2). MMI refused to accept the products, alleging that WRNMMC did not follow the "process" MMI required for return shipment. Additionally, MMI assumed that the products were not properly decontaminated before return, although it is unclear if this was ever investigated or discussed amongst the parties. (App. resp. at 3)

10. By correspondence dated December 20, 2017, MMI forwarded the letter, invoices, and attachments to the head of the Defense Health Agency (DHA) contracting activity. The correspondence specifically states "[t]his is not under formal contract as we didn't know one was required." (R4, tab 2)

11. The contracting officer sent a letter to MMI on December 21, 2017, indicating DHA would not respond to the package submitted by MMI because it was not a properly certified claim (R4, tab 3). MMI responded by correspondence dated December 22, 2017, certifying its claim (R4, tab 4).

2

12. The contracting officer issued a final decision denying appellant's claim by letter dated February 7, 2018 (R4, tab 5). MMI timely filed its notice of appeal with the Board on April 23, 2018.

## DECISION

The government contends that the Board lacks jurisdiction over this appeal because no contract, express or implied, existed. Alternatively, the government argues that even if the Board were to find jurisdiction over the appeal, MMI failed to state a claim upon which relief can be granted because the facts contained in appellant's complaint fail to allege the existence of a contract. MMI opposes the motion, arguing that it has made a non-frivolous assertion of an implied contract between the parties. MMI also argues that there has been a conversion of its property and efforts, allowing for recovery.

"Appellant, as the proponent of the Board's jurisdiction, bears the burden of establishing jurisdiction by a preponderance of the evidence." *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816 (internal citations omitted). "The facts supporting jurisdiction are subject to our fact-finding upon a review of the record." *Id.*

While the existence of a contract is essential to establish jurisdiction, an appellant "need only allege the existence of a contract to establish the Board's jurisdiction under the CDA." *American General Trading & Contracting, WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,640 (*quoting Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011)). The appellant "need not prove that either an express or implied-in-fact contract exists. Whether such a contract was formed and breached goes to the merits of the appeal." *Tele-Consultants, Inc.*, ASBCA No. 58129, 13-1 BCA ¶ 35,234 at 172,994 (internal citations omitted). "However, appellant must be able to make a non-frivolous allegation that a contract existed between it and the government." *Interaction Research Inst., Inc.*, ASBCA No. 61505, 18-1 BCA ¶ 37,196 at 180,080 (*citing Leviathan Corporation*, ASBCA No. 58659, 16-1 BCA ¶ 36,372 at 177,294). To make a non-frivolous assertion of the existence of a contract, "an appellant must present at least some plausible evidence of a contract to satisfy both the 'preponderance of the evidence' standard and the 'non-frivolous' allegation standard." *Safeco Ins. Co. of Am.*, ASBCA No. 60952, 17-1 BCA ¶ 36,819 at 179,450.

The parties agree no express contract exists (SOF ¶ 8). Thus, we must determine if the factual allegations amount to a "non-frivolous" allegation of an implied-in-fact contract. "An implied-in-fact contract has all the requirements of an express contract except that the evidence of the meeting of the minds differs." *Safeco*, 17-1 BCA ¶ 36,819 at 179,450 (*citing Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003)). As such, in order to establish the *possibility* of an implied-in-fact contract, an appellant should analyze its allegations of the existence of a contract with an eye

3

towards the following: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) the existence of a government representative whose conduct is relied upon who had actual authority to bind the government in a contract. *Safeco,* 17-1 BCA ¶ 36,819 at 179,450 (*quoting Todd Pacific Shipyards Corp.,* ASBCA No. 55126, 08-2 BCA ¶ 33,891 at 167,755).

In *Safeco,* the Board looked to other decisions involving similar jurisdictional motions in order to analyze when an allegation amounted to "non-frivolous" stating:

> In *Tech Projects, LLC,* ASBCA No. 58789, 15-1 BCA ¶ 35,940, we denied a motion to dismiss for lack of jurisdiction because the contracting officer's final decision agreed that there was an implied-in-fact contract. *Id.* at 175,661. In *Black Tiger Co.,* ASBCA No. 59819, 16-1 BCA ¶ 36,423, we denied a government motion to dismiss for lack of jurisdiction because the "notice of appeal included (1) a contract number; (2) an SF 1449 that identified appellant on the first page of the contract as the contractor; and (3) a document appellant asserted was an invoice for the equipment provided under the contract." *Id.* at 177,570. In *Leviathan Corp.,* 16-1 BCA ¶ 36,372, we denied a motion to dismiss for lack of jurisdiction because of a contract modification that offered settlement "on behalf of the U.S. Government" and included a release of claims. *Id.* at 177,294. We concluded that in each of these cases appellant had made a "non-frivolous" allegation that a contract existed between it and the government. However, in each case there were facts that indicated a contract existed. We do not see any similarities between these cases and the facts alleged by Safeco. Some of the problems we have are that the COE was not a party to the escrow agreement [...] and reliance by subcontractors likewise does not indicate an intent to enter into a contract. The facts itemized above do not relate in any way to any of the elements of an implied-in-fact contract, i.e., mutuality of intent to contract, lack of ambiguity in offer and acceptance, consideration, and that the government representative whose conduct is relied upon had actual authority to bind the government in contract. Safeco has not made a "non-frivolous" allegation that an implied-in-fact contract existed between it and the COE.

*Id.* at 179, 450-51.

Although MMI alleges there is an implied contract between the parties, like the appellant in *Safeco*, it does nothing more to support this assertion. Instead, appellant focuses on the fact that it provided pricing, terms and conditions to WRNMMC, and that WRNMMC did not return the products (SOF ¶¶ 5, 6; *see also* app. resp. at 6). The facts presented by appellant do not relate to the elements of an implied-in-fact contract. Appellant admits there was no mutual intent for the parties to enter into a contract. In fact, appellant admits that it knew the government was under no obligation to purchase any of the products it voluntarily sent for evaluation. (SOF ¶¶ 8, 10) Additionally, at no point during the exchanges between appellant and WRNMMC was a person with authority to bind the government involved. In fact, the majority, if not all substantive conversations about the product took place with Mr. Bailey, a contractor himself (SOF ¶ 2). As such, we conclude that appellant has not made a "non-frivolous" assertion of an implied-in-fact contract between itself and the government.

Further, while the Board understands appellant's position that WRNMMC is responsible for damages under a theory of conversion, "[t]he Board lacks jurisdiction to entertain a claim based upon tortious conduct which is independent of a contract between the government and a prime contractor." *Qatar Int'l Trading Co.*, ASBCA No. 55533, 08-1 BCA ¶ 33,829 at 167,428 (*citing L&M Thomas Concrete Co.*, ASBCA Nos. 49198, 49615, 98-1 BCA ¶ 29,560 at 146,538). Here, because appellant failed to make a non-frivolous assertion about the existence of a contract, the Board does not have jurisdiction over any claims for tortious conduct, as such claims could not arise from a related contractual obligation.

## CONCLUSION

The Board lacks jurisdiction over Man & Machine, Inc.'s appeal. The government's motion is granted and the appeal is dismissed for lack of jurisdiction.

Dated: July 26, 2019

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61608, Appeal of Man & Machine, Inc., rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

6